**William W. McLAURY, Plaintiff,**

v.

**DUFF AND PHELPS, INC., an Illinois corporation, Claire V. Hansen and Francis E. Jeffries, Defendants.**

**No. 84 C 4612.**

United States District Court,
N.D. Illinois, E.D.

May 13, 1988.

---

Thomas P. Ward, Thomas P. Ward Ltd., Chicago, Ill., for plaintiff.

Shelley Rice, Edward C. Fitzpatrick, C. Joseph Yast, Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

ANN C. WILLIAMS, District Judge.

On February 24, 1983, William McLaury sold to Duff and Phelps, Inc. his 800 shares of Duff and Phelps stock. Approximately ten months later, on December 31, 1983, McLaury, an employee for Duff and Phelps for thirty years, worked his last day for that corporation. In this case, McLaury charges that Duff and Phelps and certain of its officers intentionally failed to disclose to McLaury at the time of the sale material information regarding the possibility of a buyout of the corporation, made false statements regarding McLaury's obligations to the corporation and fired McLaury on the basis of his age. The purpose of this opinion is to address the defendants' pending motion for summary judgment on all five counts of McLaury's complaint. Before addressing the merits of that motion, the court believes a recitation of the undisputed facts is in order.

Duff and Phelps is an Illinois corporation engaged in the business of providing investment services. McLaury began working for Duff and Phelps in 1953 and accumulating stock in the company in 1966. McLaury held the stock pursuant to the company's Stock Restriction and Purchase Agreement ("Agreement") made May 10, 1967 and revised March 1, 1982. Paragraph 7 of the Agreement provides in relevant part as follows:

> "Upon the termination of the employment with [Duff and Phelps] of any of the undersigned individuals for any reason, including resignation, discharge, death, disability or retirement, the individual whose employment is terminated shall sell to [Duff and Phelps], and [Duff and Phelps] shall buy, all shares of [Duff and Phelps] then owned by such individual or his estate."

Defendants' Exhibit ("DX") E. By 1982, McLaury had accumulated 800 of the outstanding 21,500 shares of Duff and Phelps stock.

In 1979, when McLaury was 65 years old, he met with the Chairman and Chief Executive Officer of Duff and Phelps, defendant Claire Hansen, to discuss McLaury's future with Duff and Phelps. McLaury and Hansen agreed at the meeting that effective January 1, 1980, McLaury would work four days per week at a reduced salary. Hansen told McLaury that Duff and Phelps

wanted to buy McLaury's stock. The parties dispute whether Hansen definitively told McLaury at that time that McLaury's employment with the company would end by 1983. It is not disputed that the parties did not discuss the quality of McLaury's work on that occasion. Once in 1980 and once in 1981 Hansen again discussed with McLaury the possibility of a Duff and Phelps' purchase of McLaury's 800 shares. On each occasion that a sale was mentioned, McLaury rejected the idea.

At some point before June of 1982, Security Pacific Corporation became interested in the possibility of acquiring Duff and Phelps. *See* Plaintiff's Exhibit ("PX") 6. On July 12, 1982, the Vice–President of the Security Pacific Financial Services Division, Rory Wellings, wrote to Kenneth Bodenstein, Senior Vice–President and Director of Duff and Phelps, "to ascertain whether or not Duff and Phelps would be interested in Security Pacific Financial Services Division ("SPFSD") taking an equity position in [Duff and Phelps]." *See* PX 7. Wellings in that letter asked Bodenstein to put Wellings "in touch with the appropriate individual or individuals should an equity interest position be available for SPFSD in [Duff and Phelps]." *See id.* According to an SPFSD internal communication, Will Richeson, Chairman of the Board of Security Pacific Capital Markets Group, Inc., was in charge of reviewing Security Pacific's prospects of acquiring an interest in Duff and Phelps. *See* PX 10. Sometime after Duff and Phelps received the July 12, 1982 letter from Security Pacific, Hansen informed Richeson by phone that Duff and Phelps was not for sale. *See* Richeson Deposition ("Dep.") at 12. Subsequently, in October of 1982, Richeson and his associate Andy Thornburg met Hansen in San Diego at a conference they were attending. At that time Richeson again expressed his interest in Duff and Phelps. *See id.* at 13–16. At an unspecified time after the San Diego discussion, Hansen met again with Thornburg and others in New York. In another SPFSD internal communication dated December 6, 1982, Richeson wrote that he had met recently in Chicago with Hansen and others from Duff and Phelps. *See* PX 11.

In that communication Richeson wrote that "Claire Hansen is willing to discuss the purchase of his company but not a minority interest in the company nor does he think an incentive agreement would work." *See id.*

The Board of Directors of Duff and Phelps met on November 30, 1982. The minutes of the meeting indicate that the Board discussed McLaury's continued employment and the repurchase of his stock. *See* PX 15. The minutes then provide as follows:

> In view of the Corporation's intent to distribute in an orderly fashion the ownership of the Corporation among the new officers based on their ability to purchase those shares over a period of time, after discussion upon motion duly made, seconded and unanimously carried, the following Resolution was adopted;
> RESOLVED that the Corporation shall buy all shares of common stock of the Corporation owned by Robert J. Smith (400 shares) and William W. McLaury (800 shares). The price to be paid for such shares shall be equal to the adjusted book value of the shares on December 31, 1982.

*See id.;* DX F. After the meeting of the Board, Hansen that same day went to McLaury's office and "advised him that it was necessary for him to sell his shares back to the corporation." Hansen Dep. (May 7, 1985) at 104. Hansen made a similar representation to McLaury in February of 1983. McLaury sold his shares to Duff and Phelps for book value on February 24, 1983. It is uncontested that at no time before the sale did anyone from Duff and Phelps tell McLaury that the corporation was up for sale or that negotiations with Security Pacific for such a sale were ongoing. McLaury worked the next ten months for Duff and Phelps. His last day was December 31, 1983.

During those ten months, acquisition discussions between Duff and Phelps and Security Pacific alternatively increased and decreased. In May of 1983, almost three months after McLaury sold his Duff and Phelps stock, Richeson contacted Hansen

and mentioned the possibility of Security Pacific acquiring *all* of the stock of Duff and Phelps. Discussions continued in June and July of 1983, but were discontinued after August 11, 1983 at the instructions of Richeson's superior, Frank Cahouet. *See* Richeson Dep. at 70–71. Also on August 11, 1983, Hansen wrote Richeson a letter requesting the return of Duff and Phelps' confidential information. *See* DX H. Richeson wrote back on August 22, 1983 that he was "sorry that it does not appear that we can move forward as I was hopeful we could." *See* DX I.

Between August 11, 1983 and December 1, 1983, Duff and Phelps had no acquisition discussions with Security Pacific. On the latter date, Richeson told Hansen that Security Pacific was interested in opening discussions again. On January 6, 1984, Cahouet of Security Pacific sent Duff and Phelps a letter stating that Security Pacific intended to acquire Duff and Phelps. *See* DX J. After further negotiations, Duff and Phelps and Security Pacific signed an acquisition agreement dated March 23, 1984 which included a condition that the Board of Governors of the Federal Reserve approve of the agreement without conditions. *See* DX K. On January 9, 1985, Security Pacific announced the cancellation of the proposed acquisition because of conditions imposed on the transaction by the Federal Reserve Board.

On June 4, 1984, McLaury filed the instant five-count complaint against Duff and Phelps, Hansen and the Executive Vice-President of Duff and Phelps, Francis Jeffries. Count I alleges that the defendants violated Section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder. *See* 17 C.F.R. § 240.10b–5. Specifically, Count I alleges that the defendants made certain false statements or omitted to state certain material facts necessary to make other statements not misleading. Those alleged false statements or material omissions include the following:

(1) In February of 1983, Hansen told McLaury that McLaury was required to sell his shares immediately because the Board of Directors had by resolution or other action required McLaury to sell his shares and that Hansen implied that this applied to all employees over 65 (Complaint ¶ 14 at 3);

(2) Hansen misrepresented the true value of the shares at the time of the sale (Complaint ¶ 29(d) at 6);

(3) The defendants failed to inform McLaury that promising negotiations of a buyout of Duff and Phelps were in progress (Complaint ¶ 29(e)(1) at 7);

(4) The defendants failed to inform McLaury that the price Security Pacific was willing to pay for each share was ten to thirty times the claimed book value (Complaint ¶ 29(e)(2) at 7);

(5) The defendants failed to inform McLaury that Duff and Phelps had terminated the employment of another employee but had permitted that employee to retain his shares (Complaint ¶ 29(e)(3) at 7).

Counts II through IV are pendent state claims alleging common-law fraud, willful and wanton fraud and breach of fiduciary duty. Count V charges that the defendants violated the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621–34 because the defendants fired McLaury because of his age and failed to post a notice prepared by the Equal Employment Opportunity Commission. *See* 29 U.S.C. § 627.

The defendants now move for an order of summary judgment on each of the five counts and raise numerous arguments in support. The court will address the arguments in a logical sequence.

## I

### *Federal Securities Law Claims*

#### A. Jurisdictional Requirements of Section 10(b)

The defendants preliminarily argue that no evidence exists to establish that the defendants used any means or instrumentality of interstate commerce in connection with the purchase of McLaury's stock. In support of this argument, the defendants

point out that the conversations Hansen had with McLaury relating to that purchase all took place in person at the offices of Duff and Phelps, *see* PX 6, or over interoffice phone lines separate and distinct from the phone lines used to make outside calls. *See* Hansen Affidavit (September 17, 1986) (attached to the Defendants' Reply Memorandum). Moreover, McLaury signed over his shares in person at the Duff and Phelps offices and was paid in person by check. *See* PX 6.

Section 10(b) and Rule 10b–5 make it unlawful to engage in certain fraudulent activity in connection with the purchase or sale of a security only if done "by the use of any means or instrumentality of interstate commerce, or of the mails, or of any facility of any national securities exchange." 15 U.S.C. § 78j(b). It is not necessary that the fraud be committed during and through the actual use of the jurisdictional means; to be a violation of Section 10(b) and Rule 10b–5 it is sufficient if the jurisdictional means are used in connection with a fraudulent scheme. *Gower v. Cohn,* 643 F.2d 1146, 1152 (5th Cir.1981); *Boone v. Baugh,* 308 F.2d 711, 713 (8th Cir.1962); *Errion v. Connell,* 236 F.2d 447, 455 (9th Cir.1956); *Miller v. Affiliated Fin. Corp.,* 600 F.Supp. 987, 992 (N.D.Ill.1984) (Shadur, J.). Although the aforementioned standard routinely is satisfied in securities cases such as this, in unusual circumstances courts have dismissed Section 10(b) claims for failing to satisfy the standard. *See, e.g., Boone,* 308 F.2d at 714. The burden is on McLaury to establish jurisdiction. *See id.* at 713.

■ The court agrees with McLaury that the clearance of the check Duff and Phelps used to pay him for his stock satisfies the jurisdictional requirement. The parties do not dispute that the clearance of a check from one state to another is sufficient for jurisdiction. *See, e.g., Myzel v. Fields,* 386 F.2d 718, 728 (8th Cir.1967). The defendants claim that because the checks involved

in this case never left Illinois that this case is distinguishable. The system of clearing checks, however, is highly automated and integrated into the national banking system. Because our telephone system as a whole is integrated and an integral part of interstate commerce, courts consistently have held that even intrastate phone calls suffice to establish jurisdiction. *See Gower,* 643 F.2d at 1151–52; *Myzel,* 386 F.2d at 727–28; *Miller,* 600 F.Supp. at 992. For those same reasons, use of our system for clearing checks also should be considered use of an "instrumentality of interstate commerce" for purposes of Section 10(b).[1] *Cf. Reyos v. United States,* 431 F.2d 1337 (10th Cir.1970) (the court, without any reference to the check's interstate travel, concluded that the mere fact that a check was used supported jurisdictional finding), *rev'd in part on other grounds sub nom. Affiliated Ute Citizens v. United States,* 406 U.S. 128, 92 S.Ct. 1456, 31 L.Ed.2d 741 (1972), *reh'g denied,* 407 U.S. 916, 92 S.Ct. 2430, 32 L.Ed.2d 692 and 408 U.S. 931, 92 S.Ct. 2478, 33 L.Ed.2d 345 (1972); 4 A. Bromberg & L. Lowenfels, *Securities Fraud & Commodities Fraud* § 11.2 (533) at 246.9 (1975).

**B. Security Pacific Negotiations**

The defendants next argue that they did not and could not have concealed from the plaintiff on February 24, 1983 the existence of negotiations with Security Pacific for three reasons. First, there were no negotiations until several months later. Second, assuming the existence of negotiations, the defendants were not required to reveal the existence of the negotiations until the agreement in principle was reached on January 6, 1984. Third and finally, McLaury was not harmed by the concealment since Security Pacific eventually cancelled the transaction.

■ The court rejects the first argument. As this court's review of the undis-

---

**1.** Congress intended the phrase "instrumentality of interstate commerce" to be broader than Section 17(a)'s "instruments of transportation or communication in interstate commerce." *See Myzel,* 386 F.2d at 727 n. 2; 15 U.S.C. § 77q(a).

The court acknowledges that its ruling directly rejects Judge Shadur's oral analysis of this question in *Guy v. Duff and Phelps, Inc.,* No. 84 C 2813, transcript at 5–7 (N.D.Ill. May 29, 1987).

puted facts revealed, Security Pacific and Duff and Phelps had *some* communications regarding a potential Security Pacific purchase of Duff and Phelps stock. Even though Hansen at one point in mid–1982 informed Richeson that Duff and Phelps was not for sale, subsequently Richeson again expressed his interest in Duff and Phelps, Hansen met with Thornburg and others in New York and Hansen informed Security Pacific that he was willing to discuss the purchase of Duff and Phelps.[2]

The Supreme Court recently rejected the defendants' second argument in *Basic Inc. v. Levinson*, —— U.S. ——, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988). The essence of the defendants' argument is that merger or acquisition discussions are not rendered "material" for purposes of Section 10(b) and Rule 10b–5 until the entities involved in the discussions reach an agreement in principle as to the price and structure of the transaction. *See Greenfield v. Heublein, Inc.*, 742 F.2d 751, 757 (3rd Cir.1984), *cert. denied*, 469 U.S. 1215, 105 S.Ct. 1189, 84 L.Ed.2d 336 (1985). In *Basic* the Court refused to adopt the agreement-in-principle formulation and held that "[w]hether merger discussions in any particular case are material therefore depends on the facts." *Basic Inc. v. Levinson*, —— U.S. ——, 108 S.Ct. 978, 986–87, 99 L.Ed.2d 194 (1988). The Court in *Basic* stated that merger negotiations are material to the extent that negotiations are "significant to the reasonable investor's trading decision."[3] *Id.* 108 S.Ct. at 985. Because of the significance of a buyout to a privately-held corporation such as Duff and Phelps, negotiations regarding a buyout become material at an earlier stage than negotiations concerning other transactions. *Id.* at 987 (quoting with approval *Securities Exchange Comm'n v. Geon Indus., Inc.*, 531 F.2d 39, 47–48 (2d Cir.1976)). In making the materiality determination, the court can consider but is not limited to considering indicia of interest in the transaction at the highest corporate levels, the size of the two corporate entities involved and the potential premiums over market value.[4] *Ibid.*

2. The evidence of Hansen's willingness is based on an SPSFD internal communication. *See* PX 11. Under Rule 56 of the Federal Rules of Civil Procedure, this court can consider evidence admissible or usable at trial. *See* 10A C. Wright, A. Miller & M.K. Kane, *Federal Practice and Procedure: Civil* § 2721, at 40 (1983). In their reply, the defendants did not object to the admissibility of PX 11. This court, however, interprets Rule 56(e) to require some independent analysis by the court regarding the authenticity of documents submitted pursuant to a summary judgment motion. Even though PX 11 is not a sworn or certified copy, PX 11 does contain a "prima facie aura of reliability;" therefore the court considered it. *See Oglesby v. Coca-Cola Bottling Co. of Chicago/Wisconsin*, 620 F.Supp. 1336, 1345 (N.D.Ill.1985) (Shadur, J.) (citing *Olympic Ins. Co. v. H.D. Harrison, Inc.*, 418 F.2d 669, 670 (5th Cir.1969)). The statement relied on by McLaury in PX 11 is double hearsay—an out of court statement of Richeson concerning what Hansen had said. Hansen's statement by itself is an admission of a party opponent. *See* Fed.R.Evid. 801(d)(2)(A). Richeson's out-of-court statement is much more troublesome for evidentiary purposes. But an argument can be made that PX 11 falls within the business records exception to the hearsay rule. *See Contes v. Johnson & Johnson*, 756 F.2d 524, 549 (7th Cir.1985) (disciplinary memoranda considered business records); Fed.R.Evid. 803(6). Since the defendants have made no objection and since the document is being offered to de- fend against a motion for summary judgment, for purposes of this motion only the court will treat PX 11 as admissible.

3. The *Basic* Court expressly adopted for Section 10(b) and Rule 10b–5 the standard of materiality defined in *TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 2132, 48 L.Ed.2d 757 (1976). *Basic, Inc.*, 108 S.Ct. at 983.

4. Having chosen to argue "no negotiations" and "agreement in principle," the defendants in their motion chose not to argue that the negotiations which did occur prior to February 23, 1983 were immaterial as a matter of law. [Although they allude to such an argument in their Response to Plaintiff's Supplemental Authority filed May 13, 1987, the court does not consider such arguments when the opposing party has had no chance to respond.] Given the factual nature of such an inquiry, this court believes it to be a rare case in which materiality can be resolved at the summary judgment stage. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450, 96 S.Ct. 2126, 2132–33, 48 L.Ed.2d 757 (1976) ("The determination requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments are peculiarly ones for the trier of fact."); *James v. Gerber Prod. Co.*, 587 F.2d 324, 327 (6th Cir.1978). *But see Michaels v. Michaels*, 767 F.2d 1185, 1197 (7th

The defendants' third argument also loses. They maintain that because Security Pacific did not acquire Duff and Phelps McLaury could not have been damaged by the defendants' alleged failure to inform him of an acquisition which never took place. The Seventh Circuit recently rejected this argument by Duff and Phelps in one of the other three cases brought by former Duff and Phelps shareholders. *See Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429, 440–42 (7th Cir.1987).[5] *Accord Guy v. Duff and Phelps, Inc.*, 672 F.Supp. 1086, 1092 (N.D.Ill.1987) (Shadur, J.).

## C. The Board of Directors Resolution

■ As for Hansen's statement to McLaury that the Board of Directors resolution made it "necessary" for McLaury to sell his shares back to Duff and Phelps, the defendants argue that Hansen did not make a misrepresentation because the Board's resolution in fact did require that McLaury sell back his shares. The text of the resolution, however, belies the defendants' factual claim. The resolution states that Duff and Phelps "shall buy" McLaury's shares, not that McLaury shall sell his shares. *See* PX 15; DX F. The resolution can be interpreted as an agreement to convince McLaury just as well as an agreement to order McLaury. After all, Duff and Phelps' use of "shall sell" in the Agreement indicates that the corporation knew precisely what to say in cases where it would be *necessary* for an employee to sell his shares back.[6] *See* DX E.

## II

### State Law Claims

The defendants also seek summary judgment on Counts II through IV, the state law counts. But in this regard the defendants rely on the same arguments this court has rejected for dismissal of the federal securities claims. Those arguments do not sound any better here.

## III

### Rescission

In his prayer for relief at the end of each of Counts I through IV, McLaury seeks damages or, in the alternative, a rescission. By phrasing his prayer in such a way, McLaury has clearly expressed a preference for the remedy of damages over rescission. In *Jordan v. Duff and Phelps, Inc.*, 815 F.2d 429 (7th Cir.1987), the Seventh Circuit discussed the unfairness inherent in allowing the plaintiff "to shift all of the ordinary investment risk to the defendant(s)" by simultaneously pursuing both damages and rescission as alternative forms of relief. *Jordan*, 815 F.2d at 440. *Accord Estate Counseling Serv., Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 303 F.2d 527, 531–32 (10th Cir.1962). In light of *Jordan* and McLaury's expressed preference for damages, the court strikes all claims for rescission from Counts I through IV.

## IV

### ADEA Claim

The defendants make a number of different attacks on Count V, McLaury's age discrimination claim. The first is that the ADEA claim is barred by the statute of limitations which is three years for willful

Cir.1985) (withheld information was "immaterial as a matter of law"), *cert. denied*, 474 U.S. 1057, 106 S.Ct. 797, 88 L.Ed.2d 774 (1986).

5. *Jordan,* however, might lead to other more complex arguments (yet to be made) on the damages question.

6. In this court's prior opinion, the court ruled that based on the evidence *then of record* the court could not find that Hansen's statement to McLaury was merely a misrepresentation as to the legal effect of an instrument, specifically the Agreement. *McLaury v. Duff and Phelps, Inc.*, No. 84 C 4612, slip op. at 5 (N.D.Ill. Oct. 31,

1985) (Williams, J.) [available on WESTLAW, 1985 WL 3605]. In this motion, the defendants chose not to pursue the argument that McLaury impliedly referred to the Agreement at the time of the statement. Consequently the court did not revisit that issue. The defendants have yet to raise the argument that Hansen's statement was a misrepresentation as to the legal effect of an act (as opposed to a written instrument) and that such a misrepresentation is not actionable; therefore the court expresses no view on that issue at this time.

violations. 29 U.S.C. § 626(c). The limitations period began to run the date McLaury knew or had reason to know that the defendants had made a final decision to fire him. *See Chardon v. Fernandez,* 454 U.S. 6, 7–8, 102 S.Ct. 28, 29, 70 L.Ed.2d 6 (1981); *Delaware State College v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 504, 66 L.Ed.2d 431 (1980); *Equal Employment Opportunity Comm'n v. Kimberly–Clark Corp.,* 531 F.Supp. 58, 61 (N.D.Ga.1981). Citing to McLaury's responses to interrogatories, *see* DX D, ¶¶ 2, 11(b), the defendants argue that McLaury admits that Hansen told McLaury in 1979 that McLaury would be allowed to work only through 1983. McLaury's specific interrogatory responses were as follows:

> In 1979, before my 65th birthday in October, I had such a discussion with Claire V. Hansen. I do not recall anyone else being present. Mr. Hansen said I would have to relinquish my office of Treasurer, but was welcome to continue working as an analyst for four years. . . .

*Id.* ¶ 2.

> When Claire Hansen did speak with me in 1979 (the incident described in Response 2), he told me I could work as a Vice President after my 65th birthday through 1983.

*Id.* ¶ 11(b).

McLaury claims that he first learned of his termination in September of 1983. As for the 1979 conversation, McLaury submitted his own affidavit which in relevant part reads as follows:

> During the summer of 1979, Mr. Claire V. Hansen discussed with me my continuing employment by Duff and Phelps after I reached my 65th birthday on October 14, 1979. I stated I wanted to continue working at least until I had completed 30 years with Duff and Phelps. Mr. Hansen did not disagree or propose a shorter period. At no time during this period did I agree that I would accept a termination at the end of 1983, nor was such termination date proposed. I have reviewed the "Response to Defendant's Third Set of Interrogatories", signed and sworn to by me on

> February 25, 1986. I reaffirm my Answer 11(a) and 11(b). . . .

McLaury Affidavit (August 11, 1986) at 1.

█ The court finds that a genuine issue of fact exists as to whether McLaury knew in 1979 that the defendants intended to terminate his employment with Duff and Phelps in 1983. Even if the court considers McLaury's interrogatory answers alone, those answers can be interpreted to mean that in 1979 McLaury believed he would be with Duff and Phelps *at least* through 1983. Those answers do not indicate unambiguously that McLaury believed in 1979 that 1983 would be his last year even if he desired to work longer. McLaury's affidavit does not change the equation.

█ The defendants also argue that the plaintiff cannot meet his burden of proving he was qualified for his job. The burden of persuading this court that the defendants discriminated against McLaury is McLaury's. *Dale v. City of Chicago,* 797 F.2d 458, 462–63 (7th Cir.1986), *cert. denied,* 479 U.S. 1066, 107 S.Ct. 954, 93 L.Ed.2d 1002 (1987). McLaury can meet that burden with either direct or circumstantial evidence. *Ibid.* Since it appears that McLaury has no direct evidence of age discrimination, he must rely on the analytic framework established by the Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) for cases brought under the ADEA. *Ibid.* Under that framework, McLaury first must establish a prima facie case of discrimination by showing the following: (1) that he belongs to the protected class, (2) that his job performance had been sufficient to merit Duff and Phelps' legitimate expectations, (3) that he had been discharged in spite of his performance, and (4) that Duff and Phelps sought a replacement for him. *Ibid.* If McLaury establishes a prima facie case, the burden shifts to the defendants to articulate a legitimate, nondiscriminatory reason for the discharge. *Ibid.* If the defendants carry that burden, McLaury then must prove by a preponderance of evidence that the defendants' explanation is a mere pretext for discrimination. *Ibid. See also Kier v. Commercial*

*Union Ins. Co.*, 808 F.2d 1254, 1257 (7th Cir.1987). The defendants maintain that McLaury's ADEA claim cannot make it past first base because he cannot establish that he was qualified for his job. Citing the deposition testimony of McLaury's superiors, the defendants argue that the evidence clearly establishes that Duff and Phelps fired McLaury because of poor performance. *See* Cornish Dep. at 13–15; Stevens Dep. at 17, 20, 28–30, 79; Podrasky Dep. at 14–15, 29. The defendants further claim that McLaury's age did not come up when Duff and Phelps decided to make December 31, 1983 his last day. *See* Stevens Dep. at 92.

■ McLaury, however, provides adequate evidence to avoid summary judgment on Count V. McLaury asserts that while he was employed at Duff and Phelps, none of his supervisors ever expressed dissatisfaction with his work. *See* McLaury Interrogatory Answer ¶ 12. McLaury also maintains, and the defendants do not dispute, that he worked continuously for Duff and Phelps for 30 years and never failed to get his raises and bonuses.[7] Based solely on the duration of McLaury's stint with Duff and Phelps, the court finds that *some* evidence exists that McLaury's job performance was adequate to meet Duff and Phelps' expectations. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (in response to a claim of the absence of evidence on an element of his claim, the plaintiff must present significant probative evidence of that element to avoid summary judgment). Certainly if the jury credits McLaury's testimony that McLaury's supervisors never attacked his work product it is less likely that his poor job performance was the motive for the firing. Finally the supervisors'

deposition testimony is arguably self-serving. Although McLaury's counsel had the chance to cross-examine those supervisors at the time of the depositions, the credibility of their testimony (particularly that relating to alleged conversations when only they were present) is peculiarly important and can best be measured by the fact-finder during the heat of a fair trial.[8] *See* 10A C. Wright, A. Miller & M.K. Kane, *Federal Practice and Procedure: Civil* § 2726, at 113–15 (1983).

The defendants also argue that, even if the plaintiff establishes a prima facie case, they have articulated a legitimate nondiscriminatory reason for firing him, i.e., his poor job performance. Of course that argument rests on the same factual premises which this court has already stated are still at issue. Hence, Count V survives that argument as well.

■ Finally, the plaintiff hints in his complaint that the defendants deprived him of a "privilege" of his employment because of his age in violation of 29 U.S.C. § 623(a). The "privilege" alluded to is employee ownership of Duff and Phelps stock. The sole basis for McLaury's claim that stock ownership is a privilege of employment is the Agreement. *See* PX 17–21. The Agreement, however, in no way makes stock ownership an employee privilege; instead, its purpose ostensibly is to create *obligations* for those Duff and Phelps employees who own stock. *See id.* Although this court, for reasons already given, cannot grant the defendants' motion for summary judgment on Count V, the court deems it established that stock ownership was not a "privilege" of employment with Duff and Phelps for purposes of 29 U.S.C. § 623(a). *See* Fed.R.Civ.P. 56(d).

**7.** The plaintiff also attached to his response Duff and Phelps' written evaluations of his performance. *See* PX 50–61. He argues that none of them are critical of his performance and that his subjective ratings were average or better. But because those exhibits are not comprehensible standing alone, the court did not consider them when resolving the issues raised by the defendants' motion.

**8.** The length of McLaury's employment with Duff and Phelps and his claim that no supervisor ever criticized his work make this case distinguishable from the one relied upon by the defendants, *Kephart v. Institute of Gas Technology,* 630 F.2d 1217 (7th Cir.1980), *cert. denied,* 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981). In *Kephart,* the plaintiff had worked for the defendant less than three years and conceded that his work had been extensively criticized. *See Kephart,* 630 F.2d at 1221–23.

## Conclusion

The court denies the defendants' motion for summary judgment. The court further strikes the claims for rescission from Counts I through IV and deems as established that stock ownership was not a "privilege" of employment with Duff and Phelps for purposes of 29 U.S.C. § 623(a).