Vera SMITH, Executrix of the Estate of Robert J. Smith, deceased, Plaintiff–Appellant,

v.

DUFF AND PHELPS, INC., a corporation and Claire V. Hansen, Defendants–Appellees.

No. 91–7521.

United States Court of Appeals, Eleventh Circuit.

Oct. 22, 1993.

Griffin Sikes, Jr., Frank M. Wilson, Montgomery, AL, for plaintiff-appellant.

Richard H. Gill, Copeland, Franco, Screws & Gill, Montgomery, AL, Edward C. Fitzpatrick, Patrick E. Deady, Lord, Bissell & Brook, Chicago, IL, for defendants-appellees.

Before TJOFLAT, Chief Judge, HATCHETT and BIRCH, Circuit Judges.

TJOFLAT, Chief Judge:

Vera Smith appeals from summary judgment in favor of Duff and Phelps, Inc., on the issue of whether the statute of limitations had run on her securities fraud claims. Because a prior panel ruled (in an interlocutory appeal) that this issue was inappropriate for summary judgment, we remand for trial. Smith also appeals the district court's denial of leave to amend her complaint to reflect a federal RICO claim. Because the district court did not abuse its discretion by denying leave to amend, we affirm the denial.

### I.

We set out the facts of this case in our previous opinion. *Smith v. Duff and Phelps*, 891 F.2d 1567 (11th Cir.1990) (*Smith I*). The events that we described there have been the subject of other lawsuits as well. *See, e.g., Jordan v. Duff and Phelps*, 815 F.2d 429 (7th Cir.1987), *cert. dismissed*, 485 U.S. 901, 108 S.Ct. 1067, 99 L.Ed.2d 229 (1988); *McLaury v. Duff and Phelps*, 691 F.Supp. 1090 (N.D.Ill.1988); *Guy v. Duff and Phelps*, 672 F.Supp. 1086 (N.D.Ill.1987). Accordingly, we only briefly review the factual background.[1]

Robert Smith worked for the financial consulting and management firm Duff and Phelps, Inc., a closely held corporation, from 1956 until his retirement in 1983. Thereafter, he continued to serve as a consultant to the firm until April 1984. Smith had acquired 400 shares of Duff and Phelps stock during the 1970's, approximately 2 percent of the outstanding shares. These shares were subject to stock repurchase agreements that required Smith to sell the shares to the company at their adjusted book value upon his retirement. Pursuant to this agreement, Duff and Phelps purchased Smith's stock at a price of $100 per share in early 1983. At this time, Duff and Phelps was secretly negotiating the sale of the company. Although a deal was struck with Security Pacific Corporation in January 1984, it was an Employee Stock

---

1. Because this is an appeal from summary judgment in favor of the defendant, we resolve all factual disputes (of which there are more than a few) in favor of the plaintiff.

Ownership Trust (ESOT) that ultimately purchased the company's stock in December 1985.[2] Employees sold their stock to the trust at a price of $2,065.69 per share. Duff and Phelps notified Smith of the pending sale to Security Pacific (but not the agreed price) by two letters in February 1984.

Smith filed the present suit against Duff and Phelps on August 12, 1987, more than four years after Duff and Phelps repurchased the stock. He claimed that the company had coerced him into retirement by misrepresenting the company's mandatory retirement age. The purpose of this tactic, Smith maintained, was to reduce the number of shares outstanding and, thus, to increase the per share profits of the remaining shareholders. The case proceeded under several theories, including federal securities fraud, common law fraud, breach of fiduciary duties, state securities fraud, and violation of the Racketeering Influenced and Corrupt Practices Act (RICO Act).

In his complaint, Smith alleged that the statutes of limitations on his claims[3] did not begin to run until he read an article about lawsuits stemming from the sale of Duff and Phelps in the March 20, 1987 *Wall Street Journal*.[4] He was prepared to testify that, although diligent in his inquiry, he had not discovered the alleged fraud until he read the *Journal* article. Smith's death in September 1987 made proof of this contention problematic. Vera Smith, Robert's wife and the executrix of his estate, was subsequently substituted as plaintiff.

On October 23, 1987, the district court dismissed plaintiff's RICO claim on the ground that it failed to "state the requisite elements for a civil RICO cause of action." The court's order was silent on whether Smith had leave to amend. In any case, Smith did not seek permission to restore the RICO claim to the complaint until October 1, 1990.

Duff and Phelps filed a motion for summary judgment on November 3, 1987, contending that the statute of limitations barred the remaining claims. The district court denied the motion for summary judgment and certified the limitations issue for immediate appeal on November 10, 1988.[5] This court granted certification and affirmed the ruling that denied summary judgment in *Smith I*.

After *Smith I* was decided, the parties appeared to be headed to trial. On March 7, 1991, however, Duff and Phelps filed a motion *in limine* in which it sought to have excluded both the statements Smith made to others on the day that he read the *Journal* article and their testimony about his actions and demeanor. It argued that this evidence was inadmissible hearsay and thus unavailable to prove when Smith learned of the alleged fraud. The district court agreed, and advised the parties that the evidence would be excluded. Based on its belief that the plaintiff bore "the burden of proving that Plaintiff's deceased did not discover, and would not in the exercise of reasonable diligence have discovered, the alleged fraud before August 12, 1985," the court informed the parties that unless the plaintiff could adduce

**2.** The fact that it was not the Security Pacific deal that was consummated does not necessarily mean that Smith had no damages. *See Jordan*, 815 F.2d at 440–41.

**3.** It is now agreed that each claim carries a two year statute of limitations. *See Smith I*, 891 F.2d at 1570–71. For simplicity we refer to the (singular) statute of limitations.

**4.** In a sort of self-fulfilling prophecy, the article was titled: "Duff & Phelps Gets Still More Publicity From Getting Sued: Appeals Court Orders Trial of Claim Over Buyout; $600,000 Versus $23,000." It reported the opinion issued by the Seventh Circuit in the *Jordan* case. Although the *Journal* seemed more intrigued by Duff and Phelps chairman Claire Hansen's alleged affair

with an employee than by Judge Easterbrook's legal analysis, it did report the critical fact that there were multiple suits, at least one of which appeared likely to go to trial.

**5.** *See* 28 U.S.C. § 1292(b) (1988). The district court also found that the question of Duff and Phelps' duty to disclose information to Smith was a "controlling question[] of law as to which there [was] substantial ground for difference of opinion" and certified that question for immediate appeal. *Smith I*, 891 F.2d at 1569. The panel concluded that "Duff & Phelps had a duty to disclose to Smith any material facts which Duff & Phelps would have had to disclose in the absence of the stock repurchase agreements" and remanded the case to the district court. *Id.* at 1575.

competent evidence on this issue, he would direct a verdict on defendant's behalf at a trial of the limitations issue.

Throwing caution to the wind, the parties and the court decided to dispense with the formality of selecting a jury and having a trial. They reasoned that it would be more efficient to let the plaintiff make a proffer of his evidence before the court, and have the court grant defendant's motion for a "directed verdict." On April 22, 1991, a hearing was held at which the plaintiff presented evidence about the events of March 20, 1987. The plaintiff's counsel explained the procedure the parties and court had devised:

> [B]y doing this we have eliminated the necessity of selection of a jury this morning and making opening statements on the bifurcated issue of the statute of limitations when, in effect, we would have had no opening ... statement to make because of Your Honor's ruling on the motion in limine.
>
> But I do think the record should be clear, and it probably already is, that this procedure is by agreement of the parties. And I guess we could have gone through the sham of selecting a jury and putting them in the box. But we are certainly not waiving anything by [not] doing that.
>
> And now we would just propose to proffer the evidence that we would have submitted but for your ruling on the motion in limine, in order to make what we think will be a record that will allow for an appeal.

After the proffer, the defendant, as planned, moved to exclude the evidence as hearsay and requested a "directed verdict." Not surprisingly, the court granted the Motion in Limine on May 22, 1991, and granted the Motion for a Directed Verdict on June 6, 1991.[6]

The plaintiff appealed from the "directed verdict" on the statute of limitations defense and from a February 7, 1991, order denying her the right to amend her complaint and restate her RICO claim. We discuss the limitations issue in part II, then turn in part III to the amendment question.

## II.

In reviewing this case we are reminded that "[p]utting a saddle on a duck does not make it a horse." *Smith v. Morgan*, 235 S.W.2d 938, 942 (Tex.Civ.App.—San Antonio 1950, error dism'd) (Pope, J., concurring). Here, the "directed verdict" saddle seems singularly inappropriate on the back feathers of the proceedings below. Whatever the parties and the court chose to call what they were doing, the posture of the case was summary judgment. We must unsaddle the duck and review the *summary judgment* that the court granted in favor of the defendants on the limitations issue.

 Duff and Phelps' November 3, 1987 motion for summary judgment contended that the statute of limitations barred Smith's suit. The defendants argued that (1) the limitations period should be derived from federal law, and (2) Smith should have discovered any alleged fraud in February 1984, and thus that the statute of limitations should have begun to run at that time.[7] Similarly, Duff and Phelps' nominal motion for directed verdict[8] alleged that

> Since Plaintiff cannot prove by a preponderance of evidence that Mr. Smith did not discover and would not, in the exercise of reasonable diligence, have discovered the alleged fraud [more than two years before the suit was filed], Defendants are entitled to a directed verdict against Plaintiff and in favor of Defendants on their defense of

---

**6.** Smith did not waive her right to a jury trial by agreeing to this unorthodox procedure. As we explain below, the posture of the case was summary judgment, not trial. In its June 24, 1991 opinion, the district court agreed that the procedure did not constitute a waiver: "[T]his Court is of the opinion, and the parties seem to agree, that the Plaintiff waived the right to a jury trial on the statute of limitations defense *only as to the presentation of that defense on April 22, 1991....*" (emphasis added).

**7.** While this claim was primarily based on the notice afforded Smith by the February 1984 letters, the record also showed that the *Wall Street Journal* had run articles during 1984 and 1985 which described the sale of Duff and Phelps.

**8.** For clarity and convenience we will refer to this as the *last* motion for summary judgment.

statute of limitations as to all of the Plaintiff's claims.

The defendants claimed that the exclusion of the evidence about the events of March 20, 1987, made it impossible for Smith to meet her burden concerning discovery of the alleged fraud.[9] She claimed that the evidence about the events of March 20, 1987 was not inadmissible hearsay, and that that evidence served to demonstrate that her husband had not been aware of the fraud until he read the *Wall Street Journal* article.

The district court denied the first motion for summary judgment on April 13, 1988, concluding that

> The question for this Court becomes, then, whether the receipt of those letters in February, 1984, announcing the planned acquisition would have led a reasonable person as a matter of law to the discovery of the alleged fraud. The Court is of the opinion that summary judgment is precluded in this case since questions of notice and due diligence regarding the statute of limitations are generally questions for determination by a jury.... Simply stated, the Court concludes that it cannot hold, as a matter of law, that the said letters should have provoked inquiry leading to Mr. Smith's discovery of the nondisclosed negotiations between Defendant Duff and Phelps and Security Pacific in the fall of 1982.

The *Smith I* panel affirmed.

*Smith I* resolved the question of the applicable statute of limitations by holding that Alabama's two-year statute was controlling. 891 F.2d at 1571. The panel concluded that:

> [w]hile Alabama law governs the length of the limitations period, federal law determines at what point the limitations period begins to run. Under federal law, the

statute of limitations begins to run "when the plaintiff discovers, or in the exercise of reasonable diligence should have discovered the alleged violations."

*Id.* (quoting *Durham v. Business Management Assoc.*, 847 F.2d 1505, 1508 (11th Cir. 1988)) (citations omitted). The panel agreed with the district court that summary judgment was not appropriate on the limitations issue:

> [A] genuine issue of material fact remains regarding whether the February 1984 letters and the various Wall Street Journal articles would have put a reasonable person on notice of fraud and whether Smith exercised due diligence in determining whether he had been defrauded. Such questions are best resolved by the jury. For this reason, we hold that the district court correctly denied Duff & Phelps' motion for summary judgment on the statute of limitations ground.

891 F.2d at 1572. It appeared that there could be no summary judgment on the limitations issue unless new evidence was brought forward.

■ Although no new facts were brought before the court between consideration of the first motion for summary judgment and the last, the district court did eliminate most of the plaintiff's evidence concerning the events of March 20, 1987, the date Smith claimed to have discovered the fraud. However, since that evidence was never relevant to the issue to be decided—the date Smith *should* have discovered the fraud—its elimination did not materially affect the record. The essential limitations question to be settled was "not when the information was actually known, but rather when in the exercise of due diligence it should have been known." *Hunt v.*

---

**9.** It is not uncommon to find litigants in these sorts of cases in dispute about when the plaintiff should have discovered the fraud. What is more than a little odd, however, is to find a case in which so little evidence has been produced that it becomes attractive for each party to argue that the burden lies on its opponent.

It is beyond dispute that the defendants have the burden of proof in establishing the elements of the affirmative defense of the statute of limitations. Nevertheless, the defendants here argue that the burden of production shifted to the

plaintiff once the limitations issue was plead. They argue that since the action was brought more than two years after the time of the alleged fraud, the plaintiff bears the burden of demonstrating that the statute should be tolled. We do not agree that tolling is relevant. The statute of limitations did not begin to run until Robert J. Smith discovered, or, in the exercise of reasonable diligence, should have discovered, the alleged fraud. The defendants bear the burdens of production and persuasion on that question.

*American Bank & Trust Co.,* 783 F.2d 1011, 1014 (11th Cir.1986).[10] Whether or not Mr. Smith actually learned of the alleged fraud on March 20, 1987, the issue remained: when *should* he have learned of it? The evidence excluded by the court was inadmissible not because it was hearsay, but because it was not probative on the discovery question.[11]

■ The question whether summary judgment on the statute of limitations defense is appropriate has already been resolved. It is the law of the case, and we will not reconsider the issue in the absence of new evidence. We therefore reverse the district court's grant of "directed verdict" in favor of the defendants.

### III.

■ Several months after *Smith I* was decided, on October 1, 1990, Smith moved for leave to amend her complaint. After leave was granted, she filed her Ninth Claim for Relief, which realleged and restated the dismissed RICO claim. On December 7, 1990, the court, on reconsideration, struck the amended claim because "under the circumstances, Plaintiff's amendment is untimely and will prejudice the Defendants." On February 7, 1991, on further reconsideration, the court elaborated on its earlier analysis in refusing to allow the plaintiff to amend. Smith now appeals that ruling.

Fed.R.Civ.P. 15(a) provides that after a responsive pleading is filed "a party may amend [its complaint] ... only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." We review denial of leave to amend for abuse of discretion, and require the district court to justify the denial. "While a decision whether to grant leave to amend is clearly within the discretion of the district court, a justifying reason must be apparent for denial of a motion to amend." *Moore v. Baker,* 989 F.2d 1129, 1131 (11th Cir.1993); *see also Nolin v. Douglas County,* 903 F.2d 1546, 1550 (11th Cir.1990).

Normally, "[a] grant of leave to amend is particularly appropriate following dismissal of a complaint for failure to state a claim." *Thomas v. Farmville Mfg. Co., Inc.,* 705 F.2d 1307, 1307 (11th Cir.1983) (citation omitted). Nevertheless, we cannot conclude that the district court abused its discretion in denying leave to amend. Smith had from October 23, 1987 (when the original RICO claim was dismissed) until November 10, 1988 (when proceedings in the district court were stayed pending *Smith I*), then from May 18, 1990 (when the *Smith I* mandate issued) on to seek leave to amend. In a similar situation we noted:

> Although generally, the mere passage of time, without more, is an insufficient reason to deny leave to amend a complaint, *undue* delay may clearly support such denial. Given the long history of this case, and the opportunities for [the plaintiff] to attempt to cure the deficiencies in the complaint, [his] proposed amendment was clearly untimely; the district court did not abuse its discretion by refusing to allow it.

**10.** In his dissenting opinion, Judge Hatchett argues that we should not remand this case for trial "because the outcome is certain: a directed verdict because the statute of limitations bars the lawsuit." *Infra* at 495. Judge Hatchett's conclusion is incorrect, however, because it is not Mr. Smith's burden to prove that he first learned of the alleged fraud on March 20, 1987. Rather, it is defendants' burden, *see supra* note 9, to demonstrate that Mr. Smith *should have learned* of the alleged fraud more than two years before he filed this suit (and thus that the statute of limitations bars the suit). As it appears that the parties and the court misconstrued these standards, the parties hardly are "in the same positions they were in when the case ended in the district court." *Infra* at 495.

Moreover, remand not only is proper; it is mandatory. Even though the district court has excluded evidence since the last time this court addressed summary judgment on the statute of limitations issue, that evidence is probative only as to an improperly construed statute of limitations question; it therefore is irrelevant to the outcome of the case. The parties now stand in the same evidentiary and procedural posture as they did when we decided *Smith I.* In that case, we ruled that summary judgment was improper on the record before the court; as the record on the statute of limitations issue is unchanged since then, summary judgment remains improper.

**11.** We express no opinion on whether all of the testimony about Mr. Smith's words and deeds on March 20, 1987 is inadmissible hearsay. Though certainly interesting from a technical standpoint, it is irrelevant to our present decision.

*Hester v. International Union of Operating Engineers*, 941 F.2d 1574, 1578–79 (11th Cir. 1991) (emphasis in original; citations omitted); *see also Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Floyd v. Eastern Airlines, Inc.*, 872 F.2d 1462, 1490 (11th Cir.1989), *rev'd on other grounds*, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); *Shipner v. Eastern Air Lines, Inc.*, 868 F.2d 401, 407 (11th Cir.1989).

In its February 1991 order, the court discussed the prejudicial effect on the defendants if the amendment were allowed:

> Defendants were left with the impression that the Plaintiff had abandoned the RICO claim. Discovery in this case has, in large part, been completed, and [the addition of a RICO claim] would require Defendants to change the nature of their preparation entirely. To allow a new cause of action at this late date would be prejudicial.

We cannot conclude that the district court abused its discretion by refusing to allow Smith to revive the dismissed RICO claim after allowing it to languish for nearly three years.

### IV.

Notwithstanding the inconvenience, Vera Smith is entitled to have the factual questions underlying the limitations issue determined by an actual jury. Consequently, we reverse the district court's "directed verdict" on the limitations issue and remand for trial.

The district court acted within its discretion when it refused to allow Smith's restated RICO claim. Therefore, we affirm the February 7, 1991 order denying leave to amend the complaint.

IT IS SO ORDERED.

HATCHETT, Circuit Judge, dissenting:

I respectfully dissent. I do not find anything improper or unusual about the way the district court proceeded in this case. As I understand the proceedings, once this court remanded *Smith I* to the district court, the district court set the case for trial. The district court and the parties decided to conduct the trial in bifurcated fashion, trying the statute of limitations issue first. If the statute of limitations did not bar the suit, the parties would then try the liability and damages issues. This made good sense because the statute of limitations defense could end the case. As to the statute of limitations trial, it was the appellant's position that Robert Smith made statements to his lawyer, Griffin Sikes, Sr., and the lawyer's secretary, Gloria Davis Wiggins, on March 20, 1987, which indicated when Robert Smith first knew that he had been defrauded.

Even though the district court had indicated that it probably would exclude the testimony of Griffin Sikes, Sr., and Gloria Davis Wiggins, the parties agreed to waive a jury trial and to try the statutes of limitations issue to the court in a bench trial. At the trial, the district court excluded the Wiggins' and Sikes' testimony, and the appellants lost the statute of limitations case. Consequently, no other issues needed to be tried; the statute of limitations barred the lawsuit.

Here is the problem from the appellant's side of the case. If Smith were alive, he would testify that he first discovered the fraud on March 20, 1987. Smith would then call Sikes and Wiggins to testify that he told them on March 20, 1987, of just learning of the fraud. With that testimony, Smith would *create a fact issue as to when he first learned* of the fraud. Of course, the other side would introduce evidence attempting to prove that Smith knew or should have learned of the fraud earlier than March 20, 1987. As it now stands, with Smith dead and Wiggins' and Sikes' testimony excluded, the appellant has no evidence of when Smith discovered or should have discovered the fraud. The appellant cannot create a fact issue on the statute of limitations—not to mention prevailing. The case should not be remanded for trial because the outcome is certain: a *directed verdict because the statute of limitations bars the lawsuit.* The appellant must have the excluded evidence in order to go forward on anything in this case.

The appellant called the witnesses so that this court would have a proffer with which to determine whether the testimony of Sikes and Wiggins violated the hearsay rule, or fell within the prohibitions of the Alabama Deadman's Statute. The parties have brought

nothing on appeal in this case except the district court's ruling on the admissibility of evidence and the refusal to allow an amendment to a pleading.

The majority should decide this case based on the issues the parties framed and briefed: issues regarding admission of evidence. The parties waived a jury trial, went to trial, and the appellant suffered a directed verdict because she was unable to get into evidence crucial testimony. If the district court erred in its ruling regarding evidence, the appellant is entitled to a new trial. Instead, the majority affords the appellant a new trial without ever ruling on the evidence issues. On remand, the parties will be in the same positions they were in when the case ended in the district court. Neither the district court nor the parties are aided through this appeal.