**George D. OECHSNER, III and Donna M. Cooke Oechsner, Plaintiffs,**

v.

**Ware M. PORTER, d/b/a Porter Development Defendant/Third– Party Plaintiff,**

v.

**Parex, Inc., and KPJ Distributors, Third–Party Defendant.**

No. Civ.A. 99–0544–CB–C.

United States District Court, S.D. Alabama, Southern Division.

April 5, 2001.

Broox G. Holmes, Sr., Armbrecht Jackson LLP, Mobile, AL, Gary J. Rouse, Ron Riggle, Ronald Lee Riggle, Koch & Rouse, LLC, New Orleans, LA, for Plaintiffs.

Allan R. Chason, Chason & Chason, P.C., Bay Minette, AL, Robert S. W. Given, John F. DeBuys, Jr., John Gibbs Dana, Burr & Forman, L. Graves Stiff, III, Joel S. Dickens, Brian Alan Dodd, Starnes & Atchison, LLP, Birmingham, AL, Chris N. Galanos, Mobile, AL, Allan R. Chason, Chason & Chason, P.C., Bay Minette, AL, C. Robert Gottlieb, Jr., Mobile, AL, for Defendants.

### ORDER

BUTLER, Chief Judge.

This matter came before the Court for a non-jury trial on March 19, 2001, and April 3, 2001.

### I. *BACKGROUND*

In July of 1995, Plaintiffs, George Oechsner, et al., ("Oechsner"), bought a newly constructed home from the Defendant Ware M. Porter, ("Porter"), who had built the home as a "spec house." In 1997, the Plaintiffs noticed problems with the house associated with "excessive moisture infiltration" and when serious leaking problems arose in the roof/ceiling, the Plaintiffs had the house inspected and discovered substantial rot behind the exterior insulation and finishing system ("EIFS"). After expending substantial monies to completely remove the EIFS system in its entirety, and replace it, this action was commenced by the Plaintiffs, seeking damages from Porter for the cost of the repairs. Porter, attempting to either spread out his responsibility for the damage or to shift the blame altogether, brought third-party actions against his former business partner, James Knight ("Knight"), and against the manufacturer of an EIFS system, Parex, Inc., ("Parex"), and a distributor of the Parex EIFS products, KPJ Distributors, Inc., ("KPJ").

### II. *DISCUSSION*

After one day of trial testimony on March 19th, Plaintiffs settled with Defendant Porter, for $65,000.00, and the case proceeded solely on Porter's third-party claims. When Porter rested, all Defendants moved the Court for a Judgment as a Matter of Law pursuant to RULE 52 of the FEDERAL RULES OF CIVIL PROCEDURE, which as to Parex and KPJ, the Court granted for the reasons stated on the record. The case then proceeded with Porter and Knight, offering evidence relevant to Porter's claim of contribution from Knight based upon the partnership relationship between them. As such, the following factual findings and conclusions of law support this Court's ruling on the RULE 52 motion as well as its present ruling herein, that Third–Party Defendant Knight, is entitled to a judgment in his favor, and that Third–Party Plaintiff Porter, have and recover nothing.

### A. *Porter's Actions*

Notably, this whole case could probably have been avoided if Porter, an un-licensed general contractor, had followed the specifications of the architect who designed the Plaintiffs' house, namely that he install a traditional three coat stucco system with two coats of elastomeric coating. Jimmy Fell, ("Fell"), of Building Engineering–Consultants and the remediation expert hired by Porter, concluded that the architecturally recommended system would have provided a waterproofed exterior to the home. Instead, and for no apparent reason other than Porter's claim that all the other homes in the subdivision were being built with the EIFS system and he just "followed suit," Porter elected to apply the less reliable EIFS system. However, the problem with the Plaintiffs' house

began even before that—when Porter hired a subcontractor to pour the slab because as he admitted at trial, he had no idea how to either properly grade a site or pour a slab himself. When asked if he poured the slab even with the ground, Porter replied that he didn't think he did, and didn't know how far above grade the foundation was to be constructed. As a result, Porter then constructed the wooden frame of the house and backing for the EIFS finish so that soil, and thus moisture, could and did, easily penetrate behind the EIFS finish.

The problems only worsened as the EIFS system was applied around roof lines, windows, and doors. Critical to the success of any exterior covering of a home, is that the joints and spaces must be properly flashed and sealed. Again, by Porter's own admissions, he did no research to see how to apply the EIFS system and did not know how to properly flash and seal, but merely hired R & R Tile Company, who Porter said he trusted to do it right. Porter says "I think I did an okay job with it." But, more damaging, was the testimony of the Plaintiff's expert, Joseph Ward, ("Ward"), who assessed the damaged home and repaired it, finding that some of the flashings had actually been installed to dump water behind the EIFS finish and the caulking of the window joints had been done improperly, thus allowing water intrusion behind the finish causing rot to the wood siding/backing.

**B.  *Recovery As To Parex And/Or KPJ***

■ Porter's theories of recovery against Parex and KPJ are all based on the assumption that the EIFS system is inherently flawed because proper installation can only be accomplished with machine calibrated application, something nearly impossible to accomplish in the field. The problem with the theory, however, is that it is not supported by the evidence. Even Porter's own expert, Fell,

opined that EIFS does suffer from "not having the ability to provide adequate exterior cladding *due to misuse of the products by applicators ...*", which problems "... have also been greatly heightened by moisture intrusion problems *associated with adjacent construction items such as windows, sealants, doors, roof, and flashings."* (emphasis added).

This Court finds that all of these problems, Porter brought upon himself, through his own neglect of prudent construction/application principles in the construction of the Oechsner's house. Fell was unequivocal in his testimony, and as a result, this Court finds that EIFS systems can be installed to a degree of success as high as 90%. Fell had no way of knowing whether the application by Porter's subcontractor of the EIFS coating on the Plaintiffs' house was 90% or 10% percent successful, because by the time he was retained, the home had been completely remediated and none of the original Porter installed EIFS system, flashing, or sealants, were available to test.

Thus, Porter's claim against Parex and KPF fails if for no other reason than he has not proven by a preponderance of the evidence what degree, if any, of the damage to the Plaintiffs' home was caused by any alleged defect in the EIFS system itself. This Court finds the evidence in this case has failed to establish any such defect, and even if it had been established, damages cannot be awarded based on speculation, conjecture, or surmise.

**C.  *Recovery As To Knight***

■ As to Porter's remaining Third–Party claim against Knight, this is clearly a case of finger pointing between two disgruntled former partners. The subject of some of the former partnership ventures these two had is not in dispute—various apartment ventures and fast food locations where the evidence is clear that the former

good times these two enjoyed allowed them to be loose (characterizing it graciously) in their record keeping. However, one thing is clear, when they dissolved their partnership agreement in September of 1998, no mention was made of the Plaintiffs' house—that Porter had previously built in his name alone. Indeed, Porter had acquired the lot in his name alone, subcontracted in his name alone, borrowed construction money in his name alone, taken "loans" out of the Terrace South Partnership account that he had with Knight, *and* even listed on a handwritten financial statement he had prepared that all of the $41,213 realized from the sale of the home to the Plaintiffs was his income. Yet, Porter claims that Knight was his silent partner all along. Porter relies heavily of the fact that after the sale of the home, he paid Knight ½ of these proceeds, and Knight reported ½ of the loss on the sale of the home on his partnership tax return. In contrast, Knight claims all of this happened during a bitter domestic battle he was in, and that he thought the money he received from Porter was repayment of the "loans" and that his mind simply wasn't on business when he signed the partnership return.

When faced with this conflicting testimony, the Court is called on to perform the ultimate duty of the trier of fact—judge the credibility of the witnesses. Facilitating this Court's assessment is Porter's own testimony, when confronted on cross-examination by Knight's attorney with the financial statement showing he was claiming all the sale income as his own. After equivocating on how that information was on the financial statement in that fashion, and at first saying he wasn't sure, when asked by this Judge to look at it again, he stated: "I may have fudged, I just don't remember." Fudging is called by another name in this Court of law, and as the Eleventh Circuit has noted, "[p]utting a saddle on a duck does not make it a horse." *See Smith v. Duff and Phelps, Inc.,* 5 F.3d 488, 491 (11th Cir.1993). Thus, the choice between "fudging" on the one hand, and Knight's explanation on the other, makes it clear to the Court that the Defendant and Third–Party Plaintiff, Porter, has wholly failed to carry his burden of proof that he had any partnership relationship with Knight involving the construction and sale of the Oechsner's house and is therefore entitled to recover nothing. The Court finds as to the Oechsner's home, no such relationship existed, and as result, Porter himself is solely responsible for his ill-fated venture as well as the consequences deriving therefrom.

### III. CONCLUSION

Accordingly, judgment is entered against the Defendant and Third–Party Plaintiff Porter, and his three third-party claims, and in favor of the Third–Party Defendants, Knight, Parex, and KPJ.